UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------
                                :
ADELE COBBS,                    :    CASE NO. 1:08-CV-1634
                                :
         Plaintiff,             :
                                :
vs.                             :    OPINION
                                :    [Resolving Doc. No. 11]
BLUEMERCURY, INC., *et al*.,    :
                                :
         Defendants.            :
                                :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Adele Cobbs filed suit under the Family and Medical Leave Act (FMLA) and District of Columbia Family and Medical Leave Act (DCFMLA) alleging that her former employer Defendant Bluemercury, Inc. retaliated against her and interfered with her rights under the Acts. Defendants Bluemercury, Inc. and its Chief Executive Officer Marla Beck and Chief Operating Officer Barry Beck (collectively "Bluemercury") move for summary judgment on all claims. [Doc. 11.] Plaintiff Cobbs partially opposes the motion. [Doc. 14.] Defendants have replied. [Doc. 16.]

For the following reasons, the Court **GRANTS** Defendants' motion for summary judgment on all Plaintiff's claims.

**I. Background**

From April 2007 until her termination in July 2008, Plaintiff Cobbs worked at Defendant Bluemercury, a large cosmetics retail chain with stores in several states. During her fifteen-month employ, Cobbs was injured in two non-work-related car accidents; both required her to miss

-1-

significant work. Cobbs says Bluemercury interfered with her rights and terminated her in retaliation for her taking protected leave. Responding, Bluemercury says it gave Cobbs all the leave she needed and terminated her as part of a company-wide reduction in force.

Defendant Bluemercury employed Plaintiff Cobbs as an accounts-payable coordinator at its District of Columbia headquarters. Cobbs's job involved posting invoices in Bluemercury's accounting software, reconciling checks, and communicating with vendors. [Adele Cobbs Dep. 9:7-22, Apr. 8, 2009.] When Cobbs started in April 2007, Bluemercury was expanding at a rapid clip and Cobbs worked long hours—often 9:00 am to 7:30 pm. [Cobbs Dep. 12:17-20.] At its peak, Bluemercury employed three accounts payable coordinators—Adele Cobbs, Victoria Korsch, and Michael Shafa—and an accounts payable manager—Ann Washington. [Doc. 14 at 5.] Bluemercury's controller, Bernie Locraft, oversaw the entire accounts payable department. [Doc. 14 at 5.]

From the get-go, Cobbs suffered serious non-work-related illnesses and injuries. In June 2007, six weeks after she started with Bluemercury, Cobbs missed two days to have a large abscess drained and removed. [Cobbs Dep. 26:11-16.] Later that month, Cobbs injured her neck and back in a car accident and missed three work days. [Doc. 14 at 2; Cobbs Dep. 28:17-24.] And in July, August, and September 2007, Cobbs missed several work days to treat "internal medicine" and cold/flu issues. [Cobbs Dep. 29:2 - 31:14, 32:18-25.]

At the time of these ailments, Cobbs had not worked the requisite one year to qualify for FMLA and DCFMLA statutory leave. Nonetheless, Bluemercury voluntarily granted Cobbs's requests for time off and accommodated her in several ways. [Cobbs Dep. 22:6-11.] For example, Cobbs had not yet accrued sick-leave time, but Bluemercury allowed her to take time off using a

Case No. 1:08-CV-01634
Gwin, J.

combination of paid-vacation and unpaid leave, at her choosing. [Cobbs Dep. 30:1-10, 34:1-13.] Moreover, instead of docking her pay for missed hours, Bluemercury adjusted Cobbs's starting time to accommodate her car-accident-related physical therapy three to five days per week. [Cobbs Dep. 29:2 - 32:22; 37:7-13; 39:6-24.] Bluemercury voluntarily accommodated Cobbs for ten months until her April 2008 one-year anniversary when she qualified for statutory leave. Content with her schedule and Bluemercury's accommodations, Cobbs continued to take voluntary leave after her anniversary and did not formally request FMLA or DCFMLA leave. [Cobbs Dep. 40:7-12.]

In May 2008, while still attending physical therapy related to the first accident, Cobbs hurt her neck and arm in a second car accident. [Cobbs Dep. 38:12-14.] Cobbs says she approached her second-level supervisor Bernie Locraft and asked for an additional four or five days off but Locraft said no:

> [Cobbs]: [W]hen the second accident occurred, I told him how much time my doctor recommended me to remain out of the office, and he said that was not acceptable, that I would have to come in. And so what I did is I came in. I had the doctor adjust the dates that he initially had me out of the office so that I could work, so that I could be there. . . .
>
> Q: And so the doctor said you were medically able to go back to work?
>
> [Cobbs]: He said you can go, but you're going to have to wear this brace and this arm is going to still have to stay in the sling, and you're just going to have to limit what you can do.
>
> Q. Okay. And the company accepted you back under those conditions?
>
> [Cobbs]: Yes.

[Cobbs Dep. 89:7-90:2.] Responding, Bluemercury says Cobbs did not need these days off because it allowed her to work in a neck brace and arm sling. [Doc. 11-1 at 7.] Bluemercury did, however, continue to grant Cobbs intermittent leave so she could attend physical therapy. [Doc. 14 at 3.]

-3-

Case No. 1:08-CV-01634
Gwin, J.

After her second car accident, Bluemercury says Cobbs's unplanned absences became more frequent. In turn, it asked her to submit a disability certificate and a medical treatment plan. [Cobbs Dep. 49:19 - 51:21; Ann Washington Dep. 44:9-19, Apr. 29, 2009.] Generally, Bluemercury and Cobbs agreed that Cobbs would attend physical therapy in the morning and arrive to work between 12:00 and 1:00 pm and stay until 9:00 or 10:00 pm. [Cobbs Dep. 54:1-5; 139:2-3.]

Cobbs failed to arrive by 1:00 pm some days. As a result, Cobbs's supervisor Ann Washington reprimanded her for tardiness:

> (1) June 6, 2008 - Tardiness: Adele, you have excess daily tardiness. The last medical appointment submitted was for June 3, 2008. Your reporting Manager has no schedule of medical appointments nor an expected time of arrival. Adele you are late daily without an excuse, verbal or written. Your arrival has extended past 2 p.m. . . .
>
> (2) June 26, 2008 - Tardiness: We need you to come to work on time. As you know, you came into work today at 1:30 pm. After submitting your medical appointment schedule to us you committed to arrive by 12:00 noon, but not later than 1:00pm. Your arrival times have exceeded that time recently. Your arrival time has even extended past 2pm. You need to immediately improve your on time arrival.

[Doc. 14-9.]

Cobbs says that in the wake of her second car accident Bluemercury's management began to harass her. Cobbs alleges that: (1) Ann Washington scrutinized insignificant details of her performance and undervalued her; (2) Marla Beck, Bluemercury's CEO, did not speak to her at all when she came into the office; (3) Barry Beck, Bluemercury's COO, questioned her several times in front of her coworkers as to how long she would need to be in a cast; (4) Barry Beck stopped socializing with her; and (5) Barry Beck cancelled her parking pass. [Cobbs Dep. 64:17 - 76:17.] As a result of this harassment, Cobbs continues, she felt pressured to forgo a scheduled physical therapy session because the therapist's office was unusually busy that day and it was clear that she

Case No. 1:08-CV-01634
Gwin, J.

could not receive therapy and arrive at work by 1:00 pm. [Cobbs Dep. 76:24 - 80:7, 80:18 - 81:19.]

Bluemercury's former Vice President of Human Resources says that she had to remind Barry Beck several times that Plaintiff Cobbs had the right to take FMLA and DCFMLA leave. [Doc. 14 at 10.] This former employee also says that, in her opinion, Barry Beck was frustrated with Cobbs and "had doubts as to whether or not [Cobbs] needed the time that she was taking." [Doc. 14 at 11.] Beck denies that he harassed Cobbs and says he "just wanted to understand how long [her treatment] would last, and [] I think it was our right to do so, to understand that." [Barry Beck Dep. 8:2-15, Apr. 9, 2009.]

On July 1, 2008, Cobbs joined a pending lawsuit against Bluemercury alleging that the Defendants owed her and other employees overtime wages. [Cobbs Dep. 60:1-5.] On July 3 Cobbs formally requested intermittent FMLA and DCFMLA leave. [Cobbs Dep. 71:21 - 72:3.] A week later, Bluemercury fired her. [Cobbs Dep. 102:11-23.]

Against this backdrop, Bluemercury itself was hemorrhaging money. Bluemercury lost "more than $2 million" in 2007 and 2008 was "looking worse." [Beck Dep. 68:1-10.] Defendant Barry Beck says "we were going bankrupt, and still face that problem [today]." [Beck Dep. 69:2-3.] As a result, in May 2008 Bluemercury decided that a reduction in force was necessary. [Doc. 11-1 at 7.] Beck determined that two of the three accounts payable coordinator positions were redundant, but did not himself select which coordinators to terminate. [Doc. 11-1 at 7.] Instead, Beck asked controller Bernie Locraft to rank each coordinator based on performance. [Doc. 11-1 at 8.]

Locraft determined that Michael Shifaw was by far his best employee. He gave Plaintiff Cobbs his second-highest ranking, and Korsch his third.

Q. And when you say that Mr. Shifaw was the best, by far the best of the group, on

Case No. 1:08-CV-01634
Gwin, J.

> what objective criteria were you relying?
>
> [Locraft]: We didn't have objective criteria. It was based on a review of his daily performance. . . .
>
> Q. Can you identify for me today exactly what factors you relied on . . . ?
>
> [Locraft]: I looked at whether they were caught up with the vendors that they work on. Mike was always caught up. He was doing maybe 10 or 15 percent more work in a given time than the others were doing. He would ask for additional work, voluntarily request work to keep him busy, because he was sufficient.

[Doc. 14 at 7.]

On June 16, 2008 Barry Beck emailed CEO Marla Beck suggesting Bluemercury lay off eight employees, including Cobbs and Korsch. [Doc 11-3 at 6.] In making his termination recommendations, Barry Beck relied entirely on Locraft's rankings: "[Locraft] told me that Mike Shifaw had set the standard, and he [performed] above the rest. Today [Shifaw is] running the department himself . . . [s]o clearly our decision was correct." [Barry Beck Dep. 61:12-17; 63:2-4.]

Bluemercury terminated Cobbs, Korsh, and six other employees on July 11, 2008. [Doc 11-3 at 3.] Cobbs filed the instant suit on September 25, 2008 alleging: (1) FMLA retaliation; (2) FMLA interference; (3) DCFMLA retaliation; (4) DCFMLA interference; and (5) DC Minimum Wage Act retaliation. [Doc. 1.]

## **II. Legal Standard**

### *1. Summary Judgment*

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

Case No. 1:08-CV-01634
Gwin, J.

Under the summary judgment standard, the moving party bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

"Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment." *Williams v. Callaghan*, 938 F.Supp. 46, 49 (D.D.C. 1996). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

### III. Discussion

*A. Plaintiff's DC Minimum Wage Act Retaliation Claim*

-7-

Case No. 1:08-CV-01634
Gwin, J.

In Count V of her complaint, Plaintiff Cobbs says Bluemercury fired her because she joined a pending lawsuit alleging that the Defendants owed her overtime wages. [Doc. 1 at 13.] In the instant motion, Bluemercury says it first learned Cobbs had opted into the lawsuit two weeks after Barry Beck had selected Cobbs for termination. [Doc. 11-1 at 9.] Responding, Cobbs "acknowledges that in discovery Defendants produced such proof as to convince her that this claim was due to be dismissed." [Doc. 14 at 29.] Accordingly, the Court grants summary judgment to Defendants on Plaintiff's DC Minimum Wage Act retaliation claim.

*B. Plaintiff's FMLA and DCFMLA Retaliation Claims*

In Counts I and III of her complaint, Plaintiff Cobbs says Bluemercury terminated her because she took FMLA and DCFMLA leave to attend physical therapy and doctor's appointments. Responding, Bluemercury says Cobbs's termination was part of a planned reduction in force. Because Cobbs has not adduced sufficient evidence to create a material fact or law issue on her retaliation claims, the Court grants summary judgment to Defendants.

Courts interpret the FMLA and the DCFMLA similarly. *See Winder v. Erste*, 511 F. Supp. 2d 160, 184 (D.D.C. 2007). Both Acts make it unlawful for a covered employer to retaliate against employees for exercising rights protected under the Acts' respective provisions, which are, for present purposes, coterminous. *See* 29 U.S.C. § 2615(a)(1); D.C.Code 32-507(a).

The Court analyzes Cobbs's retaliation claims according to the *McDonnell Douglas* framework. *See Gleklen v. Democratic Congressional Campaign Comm., Inc.*, 199 F.3d 1365, 1367 (D.C. Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework: (1) Cobbs must establish a *prima facie* case that Bluemercury terminated her in violation of the Acts; (2) if Cobbs meets that burden, the burden shifts to Bluemercury to articulate a

Case No. 1:08-CV-01634
Gwin, J.

legitimate, non-Acts-violating reason for her termination; and (3) if Bluemercury meets its burden, the burden shifts back to Cobbs to produce substantial evidence that Bluemercury's proffered reason is merely a pretext for terminating her. *See Butler v. District of Columbia Housing Finance Agency*, 593 F. Supp. 2d 61, 65 (D.D.C. 2009).

To establish a *prima facie* case, Cobbs must show: (a) she engaged in protected activity; (b) she suffered an adverse employment action; and (c) the protected activity and the adverse employment action were causally connected. *See Winder*, 511 F. Supp. 2d at 184 (noting also that the elements of a *prima facie* case are the same under both Acts).

In this case, at the *prima facie* stage Defendants only contest the causation element. Straight to the point, Bluemercury asks: Why would we voluntarily accommodate Plaintiff for a year and then terminate her shortly after she was FMLA and DCFMLA protected? [Doc. 11-1 at 14, 16.] Moreover, Bluemercury continues, it eliminated Cobbs's position as part of a planned reduction in force. Responding, Cobbs says the layoffs are a subterfuge for retaliation because Bluemercury did not utilize any objective or measurable criteria when it ranked Shifaw, Cobbs, and Korsch. [Doc. 14 at 22-25.] Cobbs adds that Ann Washington, Berry Beck, and Marla Beck harassed her about taking leave just weeks before she was fired. [Doc. 14 at 22-25.]

A planned reduction in force necessitated by business conditions is a legitimate reason for terminating an employee. *See Kakeh v. United Planning Org.*, 537 F. Supp. 2d 65, 74 (D.D.C. 2008). Bluemercury, a cosmetics retailer, was not immune to 2008's global recession. Indeed, Barry Beck says the company was (and still is) teetering on bankruptcy. [Beck Dep. 69:2-3.] To cut costs, Beck identified two redundant accounts payable positions and asked Bernie Locraft to rank his subordinates. Locraft ranked Michael Shifaw first. With this information in hand, Barry Beck

-9-

Case No. 1:08-CV-01634
Gwin, J.

terminated Plaintiff Cobbs and Korsch.

To this end, Plaintiff Cobbs says a jury must decide whether Locraft's ranking system "subjective and unquantifiable . . . ." [Doc 14 at 19.] In support, Cobbs cites out-of-Circuit decisions for the suggestion that Bluemercury is under some duty to identify "objective or measurable" criteria on how it ranked Shifaw, Cobbs, and Korsch. *See Richmond v. ONEOK*, 120 F.3d 205, 209 (10th Cir. 1997); *Bohl v. Haysfeld*, 2008 WL 3200639, at *6 (S.D. Ohio Aug. 5, 2008); *Hillman v. Hamilton College*, 1998 WL 166827, at *9 (N.D.N.Y. Apr. 9, 1998). Candidly, those cases have nothing to do with the causation element of Cobbs's *prima facie* case. *See Bohl v. Haysfeld*, 2008 WL 3200639, at *6 (considering irregularities in employer's evaluation process in pretext analysis); *Hillman*, 1998 WL 166827, at *9 (same); *Richmond*, 120 F.3d at 209 (considering documentation of plaintiff's poor performance in pretext analysis).

Objectively measurable or not, Locraft considered Shifaw to be head-and-shoulders above Cobbs and Korsch: "He was doing maybe 10 or 15 percent more work in a given time than the others were doing. He would ask for additional work, voluntarily request work to keep him busy, because he was efficient." [Doc. 14 at 7.] Moreover, Cobbs does not allege that Locraft, the supervisor who actually ranked her, retaliated against her. (Unlike Cobbs's other three superiors—Ann Washington, Barry Beck, and Marla Beck—all of whom Cobbs says harassed her.) Thus, whatever animus Cobbs's other supervisors may have had, these individuals did not influence the evenhanded evaluation which led to Cobbs's termination. On this evidence, a reasonable jury could only conclude that Bluemercury's staff reduction to stave off bankruptcy caused Cobbs's termination. Accordingly, Cobbs fails to satisfy the third prong of her *prima facie* case. The Court therefore grants summary judgment to Defendants on Plaintiff's retaliation claims.

Case No. 1:08-CV-01634
Gwin, J.

Finally, even if there were a material issue regarding causation, Bluemercury has articulated a non-discriminatory explanation for terminating Plaintiff Cobbs and Cobbs has failed to show that Defendants' reason is pretextual. Defendants' motion provides ample evidence of a legitimate motive for Plaintiff's termination—a reduction in force. *See Goss v. George Washington University, 942 F. Supp. 659, 664 (D.C. Cir. 1996)*. Again, Cobbs contends that the layoffs are pretext and faults Bernie Locraft for using a subjective and unquantifiable ranking system. But, with no evidence that Locraft was influenced by a forbidden consideration, the Court will not "judge the wisdom of a corporation's business decisions." *Id*. (quotation omitted). The Court thus finds that Plaintiff has failed to adduce sufficient evidence from which a reasonable jury could infer that Bluemercury's reduction in force was a pretext for retaliation.

*C. Plaintiff's FMLA and DCFMLA Interference Claims*

In Counts II and IV of her complaint, Plaintiff Cobbs says Defendants interfered with her ability to take FMLA and DCFMLA leave. Specifically, Cobbs alleges that the Defendants denied her four or five days leave after her second car accident and harassed her into missing a scheduled physical therapy session. Responding, Bluemercury says Cobbs did not need leave after her second car accident and denies that it pressured Cobbs into missing therapy. Because Cobbs has not suffered a cognizable loss under the Acts, the Court grants summary judgment to Bluemercury on Cobbs's interference claims.

In order to succeed on her FMLA and DCFMLA interference claims, Cobbs must prove both that Bluemercury interfered with her exercise of protected rights and that the interference caused prejudice. *McFadden v. Ballard, Spahr, Andrews & Ingersoll, LLP, 611 F.3d 1, 7 (D.C. Cir. June 29, 2010)*. An employer interferes with protected rights when it interferes with, restrains, or denies

-11-

the exercise of any right provided by the Acts. 29 U.S.C. § 2615(a)(1); D.C. Code § 32-507. Prejudice exists where an employee loses compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, or suffers some loss in employment status remediable through appropriate equitable relief. 29 U.S.C. § 2617(a)(1); D.C. Code § 32-509(b)(6) (allowing also consequential damages).

Employers can be held liable both for denying their employees statutory leave and also for interfering with their exercise of those rights, short of an outright denial. *See McFadden*, 611 F.3d at 7. In *McFadden*, the plaintiff said her employer harassed her for taking too much leave to take care of her dependant husband. *Id*. As a result, she claims, she took less time off than she was entitled to and had to pay someone to take care of her husband. *Id*. The District of Columbia Circuit made clear that the plaintiff needed only to show that her employer interfered with her exercise of protected rights and that she suffered monetary losses as a direct result of the violation. *Id*.

In this case, Cobbs has failed to show that Bluemercury denied her protected leave after her second car accident. To be sure, at the time of Cobbs's May 2008 accident, Cobbs was a FMLA/DCFMLA eligible employee. 29 U.S.C. § 2611(2)(A); D.C. Code § 32-501. However, Cobbs presents no evidence that her second-accident injuries qualified as a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2611(a)(1)(D); D.C. Code § 32-503. Cobbs does not allege, for example, that her injuries required hospitalization or rendered her unable to work. 29 C.F.R. § 825.113(a)-(b). Indeed, Cobbs's physician said "you can go [to work], but you're going to have to wear this brace and this arm is going to still have to stay in the sling, and you're just going to have to limit what you can do." Under these limitations, Bluemercury allowed Cobbs to work.

Case No. 1:08-CV-01634
Gwin, J.

The Acts attempt to provide employees with "reasonable leave," without completely ignoring the legitimate "demands of the workplace." 29 U.S.C. §§ 2601(b)(1)-(2). Considering Bluemercury's accommodations and Cobbs's doctor's accord, Defendants' request that Cobbs show up to work was reasonable. Accordingly, Plaintiff's allegation that Defendants denied her protected leave is without merit.

As to Cobbs's claim that Defendants harassed her into missing physical therapy, the Court will assume *arguendo* that Defendants interfered with Cobbs's rights under the Acts. *See McFadden*, 611 F.3d at 7 (proceeding directly to prejudice prong). For damages, Cobbs says she "suffered and will continue to suffer loss of wages and benefits, loss of employment opportunities and career advancement, and damage to her professional reputation" because of Bluemercury's interference. [Doc 1.] As explained in the Court's retaliation analysis above, however, there is no causal connection between Cobbs's protected leave and Bluemercury's decision to terminate her. *See McFadden*, 611 F.3d at 7 (requiring a "causal relationship" between employer's interference and employee's harm). Thus, Cobbs cannot establish prejudice from lost or diminished wages.

Finally, Cobbs does not claim that Bluemercury's supposed interference caused her additional medical expenses or consequential damages. In *McFadden*, the employee had to hire a caretaker for her husband after her employer dissuaded her from taking leave. *Id.* In this case, however, Cobbs does not allege that she "sustain[ed] other monetary losses as a direct result of the violation, such as the cost of providing care." 29 U.S.C. § 2617(a)(1)(A)(i)(II). After a thorough review of the record including a complete review of Cobbs's deposition, the Court is unable to find any damages causally related to Bluemercury's alleged interference. The Court therefore grants summary judgment to Defendants on Plaintiff's interference claims.

Case No. 1:08-CV-01634
Gwin, J.

## IV. Conclusion

Viewing the evidence provided by both parties, in the light most favorable to the Plaintiff, the Court finds the Plaintiff fails to meet her burden of proof demonstrating FMLA/DCFMLA retaliation and interference on the part of the Defendants. The Court finds that no dispute in genuine issue of material fact or law exists in this case, entitling the Defendants to summary judgment. For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment.

A separate Order shall issue this date.


Dated: October 27, 2010    s/    *James S. Gwin*
                           JAMES S. GWIN
                           UNITED STATES DISTRICT JUDGE